IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2020

## STATE OF TENNESSEE v. CRYSTAL RENAE MCCROSKEY

**Appeal from the Criminal Court for Knox County**
**No. 114961   Steven Wayne Sword, Judge**
_____

### No. E2019-02293-CCA-R3-CD
_____

Defendant-Appellant, Crystal Renae McCroskey, was indicted by a Knox County grand jury for one count of especially aggravated assault, three counts of aggravated kidnapping, one count of aggravated assault, and one count of domestic assault in violation of Tennessee Code Annotated sections 39-13-305, 39-13-304, 39-13-102, and 39-13-111. Pursuant to a plea agreement, the Defendant pled guilty to one count of aggravated assault as a Range II, Multiple Offender for an agreed sentence of eight years, with the manner of service to be determined by the trial court. As part of the agreement, the State dismissed the five remaining counts. Following a sentencing hearing, the trial court ordered the Defendant's sentence to be served in confinement. On appeal, the Defendant argues that the trial court abused its discretion in denying her an alternative sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Clinton E. Frazier, Maryville, Tennessee, for the Defendant-Appellant, Crystal Renae McCroskey.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Charme Allen, District Attorney General; and Willie Lane, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The Defendant, Crystal McCroskey, and the victim, Jason McCroskey, were married and living together in Knoxville, Tennessee. Mr. McCroskey has multiple sclerosis, walks with a cane, and struggles to move around on his own. On September 19,

2018, Knoxville Police Department Officers responded to St. Mary's hospital to speak with the victim. The victim was reluctant to speak with the officer, but eventually told them that earlier that day the Defendant had burned him with a curling iron, punched him, and bit his face during an argument about money.[1] He said the incident occurred in the master bedroom of his apartment and described the curling iron the Defendant assaulted him with.

The victim had multiple burns on his body, including on his neck, back, stomach, legs, and arms and bite marks on his left cheek. Both of his eyes were purple and he had scratches on his arms and face. Officers proceeded to the apartment and found the Defendant inside. The Defendant told officers she had no idea what had happened to her husband and had not seen him in days. A curling iron was lying next to the door of the master bedroom in plain view. The Defendant was taken into custody and the curling iron, which appeared to have "burned fluids" on it, was seized as evidence. Days later, officers returned to the hospital when the victim became septic. At this time, the victim told officers the Defendant had also burned his anus and genitals.

In the pre-investigation report, the Defendant gave the following statement about the incident:

> I was stupid and started doing meth to help me get things done that I had to do. I didn't even realize how long I had been up or how the drug was affecting my thought process. I started hitting my husband because of the things I was thinking. It went from hitting to burning the higher I got. Finally, I came down from my high and realized I needed to leave when I realized what I was doing. I never would have done these things in my right stated [sic] of mind. I love my husband more than anything in this world.

On February 25, 2019, the victim provided the Defendant with the funds to make bond, and the Defendant was ordered to have no contact with the victim. After the Defendant made bond, property management at the victim's apartment notified law enforcement that the property manager and maintenance staff had seen the Defendant in the apartment complex. An undercover officer set up surveillance cameras around the victim's apartment. On July 5, 2018, property management was conducting a routine inspection of the victim's apartment and found the Defendant hiding in the shower. The victim had been staying with his father since the incident. An investigator spoke with the victim and his father when they returned to the apartment to check the mail. The victim's father told the investigator the Defendant had been staying at the America's Best Hotel. Officers went to the hotel and arrested the Defendant for aggravated criminal trespassing.

---

[1] Mr. McCroskey had been stabbed by the Defendant sometime during the month prior to this incident and was subsequently hospitalized.

The Defendant and the victim had been staying at the hotel together for several days prior to the arrest.

On February 20, 2019, a Knox County grand jury indicted the Defendant for one count of especially aggravated assault, three counts of aggravated kidnapping, one count of aggravated assault, and one count of domestic assault. Pursuant to her plea agreement, the Defendant pled guilty to one count of aggravated assault as a Range II, Multiple Offender for an agreed sentence of eight years, with the manner of service to be determined by the trial court. As part of the agreement, the State dismissed the five remaining counts.

On December 10, 2019, the trial court held the Defendant's sentencing hearing to determine the manner the sentence would be served. The Defendant's disciplinary file was introduced into evidence and listed the offenses she committed while incarcerated. The Defendant was found guilty of three violations: one for possession of dangerous contraband and two for hoarding and possession or the use of drugs or drug paraphernalia. The dangerous contraband the Defendant possessed was the "metal part of a pencil" that had been "flattened off." One of the hoarding offenses involved a drug prescribed to the Defendant, BuSpar. The Defendant was supposed to ingest the drug in front of officers but was later found hiding it in her cell.

The trial court considered the factors set forth in Tennessee Code Annotated section 40-35-103(1) to determine whether the Defendant was a suitable candidate for alternative sentencing. The trial court found that the Defendant did not have "a long history of criminal conduct" and noted that she had never "been on any type of long-term probation." Tenn. Code Ann. § 40-35-103(1)(A), (C). However, the trial court stated that the Defendant's failure to follow court orders after her release on bond indicated that she was unlikely to adhere to the terms of an alternative sentence. The trial court described the Defendant's assault of a "incredibly vulnerable victim" as "extremely egregious" and stated that "the nature of [the] sadistic torturing alone [justified] confinement...." Ultimately, the trial court concluded that confinement was "necessary to avoid depreciating the seriousness of the offense" and that this outweighed the factors in favor of an alternative sentence. Tenn. Code Ann. § 40-35-103(1)(B). The trial court sentenced the Defendant as a Range II, multiple offender to eight years' imprisonment.

## ANALYSIS

The Defendant contends that the trial court erred in denying alternative sentencing, arguing that the State failed to show her offense "was of a nature that outweighs all factors favoring a sentence other than confinement." The State argues that the trial court "conducted a detailed analysis of the statutory factors" and properly exercised its discretion when denying alternative sentencing. We agree with the State.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(5) (2006) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

Tenn. Code Ann. § 40-35-102(5) (2006).

In addition, Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. § 40-35-102(6)(D) (2006).

A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing Tenn. Code Ann. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. Bunch, 646 S.W.2d at 160 (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

In this case, the trial court made the required findings on the record when denying the Defendant an alternative sentence. The trial court considered all the relevant factors enumerated in Tennessee Code Annotated section 40-35-103(1) and determined that the nature of the offense outweighed the factors in favor of alternative sentencing. "In order

to deny an alternative sentence based [solely] on the seriousness of the offense, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997). The trial court properly determined that the Defendant's offense met this standard. The trial court considered the "number of wounds" the Defendant inflicted on a "incredibly vulnerable victim," describing the offense as "extremely egregious" and an "act of [] sadistic torturing." Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we affirm the trial court's denial of an alternative sentence.

## **CONCLUSION**

Based on the analysis above, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE